1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANG BEE YANG, an individual; and LAU YANG, an individual, )<br><br>Plaintiffs, )<br><br>v. )<br><br>SUN TRUST MORTGAGE, INC., a VIRGINIA CORPORATION; and DOES 1 through 25, inclusive, )<br><br>Defendant. ) | 1:10-CV-01541 AWI SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>[Doc. #41] |

**INTRODUCTION**

On June 15, 2011, Plaintiffs Chang Bee Yang and Lau Yang filed a Second Amended Complaint ("SAC") against Defendant SunTrust Mortgage, Inc. ("SunTrust").[1]  In the SAC, Plaintiffs allege eight causes of action against SunTrust, which relate to a Residential Construction Loan Agreement ("RCLA") entered into between Plaintiffs and SunTrust. SunTrust moves to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, the motion will be granted.

---

[1]     SunTrust was erroneously sued as Sun Trust Mortgage, Inc.  The SAC was also filed against Defendant Michael J. Carter.  On August 3, 2011, Plaintiffs filed a stipulation of dismissal of Carter, which was granted by the Court on August 5, 2011.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]"  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## ALLEGED FACTS

On December 16, 2006, Plaintiffs and SunTrust entered into a RCLA. SAC at ¶ 8. Under the RCLA, SunTrust agreed to loan Plaintiffs $742,450.00 in order to purchase real property located at 10966 E. Promontory Way, Clovis CA, 93619. Id. at ¶¶ 8-9. Plaintiffs used $200,000.00 of the loan proceeds to purchase the lot and the remaining $542,450.00 for construction. Id. at ¶ 11. Plaintiffs hired Sierra Custom Homes Inc. ("Contractor") to construct the residential home on the property. Id. at ¶ 10.

Pursuant to the RCLA, the loan proceeds were to be deposited into an account held by SunTrust. Id. at ¶ 12. According to Paragraph 2 of the RCLA, the loan proceeds were to be advanced to Contractor by SunTrust when Contractor reached stages of completed work. Id. Plaintiffs were to supervise Contractor and inform SunTrust about Contractor's need for monies under the RCLA. Id.

Paragraph 7 of the RCLA required that Plaintiffs irrevocably appoint SunTrust as "Power of Attorney" and allowed SunTrust to make payments directly to Contractor, which was in disregard of other provisions of the RCLA. Id. at ¶ 13. At SunTrust's request, Plaintiffs executed a Disbursement Authorization whereby SunTrust was authorized to distribute funds directly to Contractor. Id. at ¶ 14. SunTrust also advised Plaintiffs by written correspondence that SunTrust was responsible for coordinating inspections and disbursing funds throughout the construction phase. Id. at ¶ 15.

SunTrust hired and assigned Michael J. Carter ("Carter"), a California licensed real estate appraiser, to evaluate and inspect the work on the construction project and each draw request from Contractor. Id. at ¶ 16. Carter, at all relevant times, was an agent of SunTrust. Id. There were fifteen total draw requests made by Contractor. Id. at ¶ 17. Carter would evaluate each

3

draw request by Contractor and then submit them to SunTrust.  Id. at ¶¶ 16, 22.

Plaintiffs allege that SunTrust and Carter misrepresented to Plaintiffs through the Draw Requests and Inspection Reports prepared by Carter.  Id. at ¶ 20.  Specifically, Plaintiffs allege SunTrust and Carter made the following misrepresentations:

a.   Draw Number 11 funded on February 11, 2008: Appraiser indicated that the inside doors, exterior windows and doors and permanent roof were 100% complete on the residence;

b.   Draw Number 13 funded on April 25, 2008: Appraiser indicated that 100% of the interior paint was completed on the residence; and

c.   Draw Number 14 funded on May 21, 2008: Appraiser indicated that the exterior paint was 100% complete on the residence (except for touch up); that the hood and oven were not on site, but all other appliances were on site but not installed; that the level of completion with respect to the appliances was 60%; and that the landscaping was complete.

Id.  SunTrust and Carter made these representations despite the fact that Carter had knowledge that:

a.   As of February 11, 2008: At least one pair of interior double doors had not been supplied or installed in the residence; one exterior door had not been supplied or installed; no interior or exterior door knobs had been installed or supplied; two garage doors and openers had not been supplied; four (4) windows had not been supplied or installed; and the permanent roof was not completed;

b.   As of April 25, 2008: Only the interior primer had been completed and no paint had been applied to the interior of the residence; and

c.   As of May 21, 2008: The exterior paint of the residence was not complete, only the initial stucco had been applied; no appliances were on site other than the hood and oven; no landscaping had been completed.

Id. at ¶ 21.

SunTrust and Carter intended to induce Plaintiffs to rely on these misrepresentations by issuing statements to Plaintiffs between December of 2006 until completion of the construction project for payment of mortgage interest.  Id. at ¶ 22.  SunTrust's statements were based upon the amount of monies advanced to Contractor as a result of the Inspection Reports and Draw Requests submitted by Carter to SunTrust.  Id.

4

1    Plaintiffs allege that each draw request was paid by SunTrust to Contractor without

2    Plaintiffs' authorization or approval.  Id. at ¶ 17.  Contractor failed to complete the work paid by

3    SunTrust.  Id. at ¶ 18.  Plaintiffs have been forced to expend in excess of $100,000.00 to

4    complete the project after SunTrust paid Contractor in an amount equal to approximately ninety-

5    six (96%) percent of the construction project cost when only approximately seventy-five (75%)

6    percent of the construction project was actually complete.  Id. at ¶ 33.

**DISCUSSION**

A.    Fraud and Negligent Misrepresentation

9    SunTrust moves to dismiss Plaintiffs' claims for fraud and negligent misrepresentation.

10   SunTrust contends that Plaintiffs have not pled their fraud claims with the requisite specificity

11   and have not alleged justifiable reliance.  Motion at 4:16-20.

12   In California, the elements of fraud are (1) misrepresentation (false representation,

13   concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e.,

14   to induce reliance; (d) justifiable reliance; and (5) resulting damage.  Lazar v. Superior Court, 12

15   Cal. 4th 631, 638 (1996).  "The same elements comprise a cause of action for negligent

16   misrepresentation, except there is no requirement of intent to induce reliance."  Cadlo v. Owens-

17   Illinois, Inc., 125 Cal. App. 4th 512, 519 (2004).

18   Under the heightened pleading standard of  Rule 9(b) of the Federal Rules of Civil

19   Procedure, "a party must state with particularity the circumstances constituting the fraud."  A

20   plaintiff must include the "who, what, when, where, and how" of the fraud.  Vess v. Ciba-Geigy

21   Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  "Negligent misrepresentation 'sounds in

22   fraud' and thus is also subject to these heightened pleading standards."  Robinson v. Wachovia

23   Mortg., No. CIV. 2:10-3014 WBS GGH, 2011 WL 338502, at *3 (E.D. Cal. Jan. 31, 2011).

24   Plaintiffs' SAC creates confusion as to what they are alleging constituted a

25   misrepresentation.  Plaintiffs set forth contradictory allegations in their SAC.  Plaintiffs allege

26   that Contractor issued the Draw Requests, which were reviewed by Carter and then submitted to

5

SunTrust.  SAC at ¶¶ 16-17, 22.  However, Plaintiffs also allege that SunTrust and Carter misrepresented to the Plaintiffs through the Draw Requests and Inspection Reports prepared by Carter.  Id. at ¶ 20.

SunTrust raises the issue that the Draw Requests were issued by Contractor to SunTrust and that no misrepresentations were directly made to Plaintiffs through the Draw Requests. Motion at 6:19.  Plaintiffs admit in their opposition that they "were never given the opportunity to view either the draw requests or inspection reports [issued by Contractor] prior to . . . being submitted to SunTrust[.]"  Opposition at 6:21-23.  Therefore, to the extent that Plaintiffs are basing their fraud and negligent misrepresentation claims on the Inspection Reports or Draw Requests being presented directly to Plaintiffs, Plaintiffs cannot state a claim.[2]

Plaintiffs clarify in their opposition that they are basing their fraud and negligent misrepresentation claims on the statements issued by SunTrust to Plaintiffs for payments to be made under the RCLA.  Id. at 6:24-27.  Plaintiffs state that SunTrust misrepresented to Plaintiffs the amount due under the RCLA because the statements were based upon the amount of monies advanced to Contractor as a result of Carter's fraudulent inspection reports and draw requests. Id. at 6:16-20.

Thus, it appears that Plaintiffs' fraud theory is the following.  Contractor issued Draw Requests relating to the construction of Plaintiffs' home.  SAC at ¶ 17.  Carter evaluated and inspected the work on the construction project and each Draw Request from Contractor.  Id. at ¶ 17.  Carter then submitted fraudulent Draw Requests to SunTrust, claiming that more progress was made on Plaintiffs' home than in reality.  Id. at ¶¶ 20-22.  The proceeds of the loan were then advanced by SunTrust to the Contractor.  Id. at ¶ 12.  Subsequently, SunTrust issued

---

[2]       SunTrust also points out that Plaintiffs alleged in their original complaint that SunTrust breached the RCLA by failing to provide Plaintiffs with copies of all draw requests and inspection reports.  Motion at 5 n.8.

6

statements to Plaintiffs for payments under the RCLA, which were calculated based upon the amount of monies advanced to Contractor as a result of Carter's fraudulent draw requests.  Id. at ¶ 22.  Presumably, Plaintiffs are arguing that Carter's knowledge of the fraudulent draw requests is imputed to SunTrust because Carter was acting as an agent for SunTrust.[3]  SAC at ¶ 16; see also In re Marriage of Cloney, 91 Cal. App. 4th 429, 439 (2001) (stating that the general rule is that the knowledge of the agent in the course of his or her agency is the knowledge of the principal).

Under this theory, Plaintiffs' fraud and negligent misrepresentation claims still fail.  Plaintiffs have not stated their claims with the requisite specificity.  First, Plaintiffs do not allege when the statements were exactly sent out by SunTrust.  Plaintiffs only allege that SunTrust issued statements to Plaintiffs between December of 2006 until the completion of the Project.  SAC at ¶ 29.  Second, Plaintiffs do not allege what the statements specifically stated.  Plaintiffs only allege that the statements were for "payment of mortgage interest[.]"  SAC at ¶ 22.  Thus, it is unclear what representations were exactly made by SunTrust within those statements.  Plaintiffs contend in their opposition that SunTrust "cannot realistically argue that it has no notice of what 'representations' were made within such statements" because SunTrust "is the one responsible for creating and providing such statements to Plaintiffs[.]"  Opposition at 7:14-16.  However, Plaintiffs' argument is misguided.  It is Plaintiffs' burden to set forth sufficient factual allegations against SunTrust irrespective of SunTrust's actual knowledge.

---

[3]     While not raised as an issue by SunTrust, the Court notes that Plaintiffs have not alleged facts establishing that Carter was an "agent" of SunTrust.  Plaintiffs only make the conclusory allegation that Carter was an agent.  SAC at ¶ 16.

From the SAC, it appears that Carter was an independent contractor and not an employee of SunTrust.  An independent contractor is also an agent when it "contracts to act on behalf of another and subject to the other's control, except with respect to his physical conduct[.]"  City of Los Angeles v. Meyers Bros. Parking Sys., Inc., 54 Cal. App. 3d 135, 138 (1975).  Since Plaintiffs are basing their fraud claims on Carter's imputed knowledge to SunTrust, Plaintiffs were required to allege facts showing that Carter was an agent.  Any amended fraud claim must include factual allegations establishing that Carter was an agent of SunTrust.

7

1    In addition, Plaintiffs have not alleged that they (1) actually relied on the statements; (2)

2    suffered any damages as a result of that reliance; or (3) justifiably relied on the statements.  See

3    Panoutsopoulos v. Chambliss, 157 Cal. App. 4th 297, 308 (2007) (stating that the "causation

4    aspect of actions for damage for fraud and deceit involves three distinct elements: (1) actual

5    reliance, (2) damage resulting from such reliance, and (3) right to rely or justifiable reliance").

6        Accordingly, SunTrust's motion to dismiss Plaintiffs' claims for fraud and negligent

7    misrepresentation is GRANTED.  Plaintiffs' opposition contains numerous allegations related to

8    their fraud claims that were not set forth in the SAC.[4]  Based on the opposition, it appears that

9    amendment would not be futile.  See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)

10   (facts raised in opposition papers may not defeat a motion to dismiss, but may be considered by

11   the court to determine whether dismissal should be with or without prejudice).  Therefore,

12   dismissal is without prejudice and with leave to amend.

13   B.    Unfair Competition Law Claims

14       SunTrust moves to dismiss Plaintiffs' claims brought under California's Unfair

15   Competition Law ("UCL").  SunTrust contends that Plaintiffs have not stated any claim under

16   the UCL.  Motion at 10:5.

17       The purpose of the UCL "is to protect both consumers and competitors by promoting fair

18   competition in commercial markets for goods and services."  Kasky v. Nike, Inc., 27 Cal. 4th

19   939, 949 (2002).  The UCL prohibits "any unlawful, unfair or fraudulent business act or

20   practice."  Cal. Bus. & Prof. Code § 17200.  "Because [the UCL] is written in the disjunctive, it

21   establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or

22   fraudulent.  In other words, a practice is prohibited as unfair or deceptive even if not unlawful

23   and vice versa."  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163,

24

---

25       [4]    For example, Plaintiffs allege that (1) SunTrust misrepresented the amount of
     monies paid out by SunTrust to Contractor; and (2) Plaintiffs did in fact make payments based
26   upon the statements.  Opposition at 7:1 and 8:10-11.

27

28                                                    8

1   180 (1999) (internal quotation marks and citations omitted).

2         It appears that Plaintiffs' SAC sets forth three theories as to why SunTrust's conduct

3   violates the UCL.  First, Plaintiffs allege that SunTrust has "intentionally drafted residential

4   construction loan agreements which allow SunTrust to forgo notice to the borrower as to the

5   monies being disbursed yet impose a burden on the borrower to pay monies for work which the

6   borrower is unable to verify has been performed."  SAC at ¶ 33.  Second, Plaintiffs assert that

7   SunTrust is liable based on the statements issued to Plaintiffs for payments under the RCLA.[5]

8   Opposition at 10:6-8; SAC at ¶¶ 20-22, 33.  Third, Plaintiffs allege a violation of the UCL

9   because SunTrust failed "to inform customers as to what the funds for each and every draw being

10  distributed are for, specifically, in relation to the work being performed, thereby precluding

11  customers from determining if the amount of monies being disbursed is in fact correct and in line

12  with the amount of work completed on a project."  SAC at ¶ 34.

13        While unclear in the SAC, Plaintiffs clarify that they are asserting claims for "fraudulent"

14  and "unfair" business practices based on these three theories in the SAC.  Opposition at 9:22.  In

15  addition, Plaintiffs assert a fourth theory in their opposition.  Plaintiffs contend that they have

16  stated an "unlawful" business practice claim because they have adequately stated their fraud

17  claims.  Opposition at 9:6-9.

18        1.      Fraudulent Business Practices

19        A "fraudulent" business practice under the UCL occurs when "members of the public are

20  likely to be deceived."  Kasky, 27 Cal. 4th at 951.  "In order to state a cause of action under the

21  fraud prong of the UCL a plaintiff need not show that he or others were actually deceived or

22  confused by the conduct or business practice in question.  The fraud prong of [the UCL] is unlike

23  _____

24        [5]     Within their UCL claim in the SAC, Plaintiffs again allege that SunTrust made
    misrepresentations to Plaintiffs based on the Draw Requests and Inspection Reports.  SAC at ¶
25  34.  However, as discussed above, Plaintiffs admitted in their opposition that they did not see the
    Draw Requests or Inspection Reports.  Therefore, Plaintiffs cannot state a UCL claim based on
26  SunTrust making misrepresentations through the Draw Requests or Inspection Reports.

27

28                                          9

common law fraud or deception.  A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1275 (2006) (internal quotation marks and citation omitted).

Plaintiffs have not stated a claim for a fraudulent business practice under any of their theories.  With respect to the first theory, Plaintiffs allege that SunTrust intentionally drafted their residential construction loan agreements to allow for SunTrust to forgo notice to the borrower as to the monies being disbursed.  SAC at ¶ 33.  However, the RCLA states that "[u]nless Borrower authorizes in writing disbursements to be paid directly to another party, all advances shall be made directly to Borrower."  SAC at Exhibit A, Doc. 36-1 at 2.[6]  The RCLA further states that "Borrower will not endorse checks or otherwise deliver to Contractor any of the funds received from Lender evidencing the Loan proceeds until the portion of the Work for which such funds are to pay has been completed by Contractor[.]"  Id.  Thus, contrary to Plaintiffs' assertion, the RCLA explicitly provides for a Borrower to receive the loan proceeds directly and pay the Contractor only if the work has been actually completed.  Plaintiffs, however, opted out of receiving the loan proceeds directly by executing a Disbursement Authorization, which authorized SunTrust to distribute funds directly to Contractor.  SAC at ¶ 14.  Thus, Plaintiffs have not sufficiently alleged why a consumer would be likely to be deceived by the way SunTrust drafts its contracts.

With respect to the second theory, Plaintiffs assert that SunTrust is liable based on issuing statements to Plaintiffs for loan payments based on Carter's fraudulent draw requests.

---

[6]    "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the motion into a Rule 56 motion for summary judgment[.]" United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." Id. at 908.  In this case, Plaintiffs have attached the RCLA to their Complaint and incorporated the RCLA by reference.  SAC at ¶ 8 and Exhibit A.  Therefore, the Court will consider the RCLA in ruling on SunTrust's motion to dismiss.

1  Opposition at 10:6-8; SAC at ¶¶ 20-22, 33.  When a UCL claim is based on a fraudulent course

2  of conduct, it must meet the heightened pleading standard of Rule 9(b).  Kearns v. Ford Motor

3  Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Since the Court has already concluded above that

4  Plaintiffs have failed to plead their fraud claims with requisite specificity, the Court also

5  dismisses Plaintiffs' UCL claim based on SunTrust's alleged fraudulent course of conduct.

6        With respect to the third theory, Plaintiffs allege that SunTrust failed to inform customers

7  as to what funds for each draw were for.  SAC at ¶ 34.  Essentially, Plaintiffs are alleging that

8  SunTrust committed a fraudulent business practice because of a failure to disclose.  However,

9  "[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent

10  prong of the UCL."  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1557 (2007).

11  "This is because a consumer is not 'likely to be deceived' by the omission of a fact that was not

12  required to be disclosed in the first place."  Buller v. Sutter Health, 160 Cal. App. 4th 981, 987

13  (2008).  Plaintiffs have not alleged that SunTrust was under a duty to disclose what funds for

14  each and every draw being distributed are for.

15        Accordingly, SunTrust's motion to dismiss Plaintiffs' fraudulent business practice claims

16  is GRANTED without prejudice and with leave to amend.

17        2.    Unfair Business Practices

18        "California's unfair competition law, as it applies to consumer suits, is currently in flux."

19  Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 735 (9th Cir. 2007).  California courts

20  have previously applied a balancing test to determine whether a business practice is "unfair"

21  under the UCL.  Under that test, "the determination of whether a particular business practice is

22  unfair necessarily involves an examination of its impact on its alleged victim, balanced against

23  the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court . . . weigh[s]

24  the utility of the defendant's conduct against the gravity of the harm to the alleged victims."

25  Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980).

26

27

28                                           11

1    Subsequently, in <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.</u>,

2   20 Cal. 4th 163, 186-87 (1999), the Supreme Court of California held that an "unfair" business

3   practice must "be tethered to some legislatively declared policy or proof of some actual or

4   threatened impact on competition."  Therefore, the court concluded that an "unfair" business

5   practice means "conduct that threatens an incipient violation of anti-trust law, or violates the

6   policy or spirit of one of those laws because its effects are comparable to or the same as a

7   violation of the law, or otherwise significantly threatens or harms competition."  <u>Id.</u> at 187.

8   However, the court expressly limited its holding to cases in which a competitor is alleging

9   anticompetitive practices against another competitor.  <u>Id.</u> at 187 n.12.

10    Since <u>Cel-Tech</u>, some California Courts of Appeal have applied <u>Cel-Tech</u> to consumer

11   cases, while others have continued to adhere to the balancing test.  <u>See</u> <u>Paulus v. Bob Lynch</u>

12   <u>Ford, Inc.</u>, 139 Cal. App. 4th 659, 679-80 (2006) (discussing split of authority).  In addition,

13   other California Courts of Appeal have adopted a third test.  In <u>Camacho v. Automobile Club of</u>

14   <u>Southern California</u>, 142 Cal. App. 4th 1394, 1403 (2006), the court adopted the three-pronged

15   test contained in the Federal Trade Commission Act.  Under this test an "unfair" business

16   practice requires that (1) the consumer injury be substantial; (2) the injury must not be

17   outweighed by any countervailing benefits to consumers or competition; and (3) it must be an

18   injury that consumers themselves could not reasonably have avoided.  <u>Id.</u>  SunTrust asks the

19   Court to follow the three-pronged <u>Camacho</u> test.  <u>Motion</u> at 10:13-17.  Plaintiffs have not

20   addressed the issue.

21    In <u>Lozano</u>, the Ninth Circuit "endorsed" a district court's use of the balancing test.

22   <u>Lozano</u>, 504 F.3d at 736.  However, the Ninth Circuit concluded that courts faced with consumer

23   lawsuits have the option to either (1) apply <u>Cel-Tech</u> and require that unfairness be tied to some

24

25

26

27

28                                                              12

legislatively declared policy or (2) adhere to the balancing test.[7]  Id.  The Ninth Circuit stated that the approaches are not "mutually exclusive" because "adopting one standard does not necessitate the rejection of the other[.]"  Id.

Plaintiffs have not stated a claim for "unfair" business practices under either test.  Plaintiffs fail to state a claim under the Cel-Tech test because they have not alleged that SunTrust's conduct violates a "legislatively declared policy."

Furthermore, under the balancing test, Plaintiffs have not stated a claim.  First, as discussed above, SunTrust does not intentionally draft its residential construction loan agreements to allow SunTrust to forgo notice to the borrower as to the monies being disbursed.  The RCLA states that all loan advances are made directly to the borrower, unless the borrower opts out, which the Plaintiffs did in this case.  Thus, Plaintiffs have not sufficiently alleged why they suffered any harm as a result of the way the RCLA was structured.  See Samura v. Kaiser Found. Health Plan, 17 Cal. App. 4th 1284, 1299 n.6 (1993) (stating that the "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts").

Second, Plaintiffs base their unfair business practices claim on Plaintiffs' alleged fraudulent conduct in issuing the statements to Plaintiffs based on the Draw Requests.  Since this claim is "grounded in fraud," it must also meet the heightened pleading standard of Rule 9(b).  Kearns, 567 F.3d at 1127.  Therefore, this claim is dismissed based on failure to meet the heightened pleading standard of Rule 9(b).

Third, Plaintiffs have not sufficiently alleged any harm as a result of SunTrust failing to inform customers as to what funds for each and every draw distributed are for.  Plaintiffs do not allege that SunTrust violated any terms of the RCLA or were under any obligation to disclose

---

[7]    The Ninth Circuit declined to apply the Camacho standard, concluding that the Federal Trade Commission test was not appropriate in consumer cases.  Lozano, 504 F.3d at 736.  This Court has previously applied the Cel-Tech test to consumer cases.  See Lotenero v. Everett Fin. Inc., No. 1:11–CV–200 AWI SMS, 2011 WL 2462775, at *5 (E.D. Cal. Jun. 17, 2011).

this information to borrowers.  In addition, as stated above, the RCLA does allow for borrowers to receive the loan proceeds directly and not pay the contractor until the borrower ensures the work is actually completed.  See Spiegler v. Home Depot U.S.A., Inc., 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) (stating that the "UCL cannot be used to rewrite . . . contracts or to determine whether the terms of . . . contracts are fair").

Accordingly, SunTrust's motion to dismiss Plaintiffs' unfair business practice claims is GRANTED without prejudice and with leave to amend.

3.      Unlawful Business Practices

An "unlawful business practice or act" is an act or practice, committed pursuant to business activity, that is at the same time, forbidden by law.  Klein v. Nature's Recipes, Inc., 59 Cal. App. 4th 965, 969 (1997).  Virtually any law can serve as the predicate for a section 17200 action.  Id.  At least two federal district courts in California have concluded that a violation of common law fraud is actionable as an "unlawful" business practice.  See Roots Ready Made Garments v. Gap Inc., No. C 07-03363 CRB, 2008 WL 4078437, at *10 (N.D. Cal. Aug. 29, 2008); Diaz v. Allstate Ins. Group, 185 F.R.D. 581, 591 (C.D. Cal. 1998).  However, since the Court has already dismissed Plaintiffs' fraud and negligent misrepresentation claims, Plaintiffs' unlawful business practice claim must also be DISMISSED without prejudice and with leave to amend.

C.      Civil Conspiracy

SunTrust moves to dismiss Plaintiffs' conspiracy to defraud claim.  SunTrust argues that conspiracy is not an independent cause of action and requires a finding of an underlying tort. Motion at 12:15.  The Court agrees.  "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510 (1994) (citation omitted).  "Standing alone,

14

a conspiracy does no harm and engenders no tort liability.  It must be activated by the commission of an actual tort." Id. at 511.  Further, to allege a "conspiracy to defraud," a complaint must meet the particularity requirements of Rule 9(b).  Sandry v. First Franklin Fin. Corp., No. 1:10-cv-01923-OWW-SKO, 2011 WL 202285, at *4 (E.D. Cal. Jan. 20, 2011).

Since Plaintiffs' fraud and negligent misrepresentation claims have been dismissed against SunTrust, Plaintiffs' claim for conspiracy must also fail.  Furthermore, Plaintiffs' conclusory allegations of conspiracy in the SAC are insufficient under Rule 9(b).  Accordingly, SunTrust's motion to dismiss Plaintiffs' civil conspiracy claim is GRANTED without prejudice and with leave to amend.

D.     Conversion

SunTrust moves to dismiss Plaintiffs' conversion claim.  SunTrust argues that Plaintiffs have not shown that SunTrust wrongfully exerted dominion over Plaintiffs' property in denial or inconsistent with Plaintiffs' rights therein.  Motion at 13:20-21; see also reply at 9:24-25.

"Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.  It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." Oakdale Village Group v. Fong, 43 Cal. App. 4th 539, 543-544 (1996).

Plaintiffs allege that they are the owners of monies wrongfully disbursed to Contractor by SunTrust based upon the fraudulent Draw Requests and Inspection Reports of Carter.  SAC at ¶ 46.  Plaintiffs allege that SunTrust wrongfully converted Plaintiffs' monies by disbursing monies to Contractor for work that had not yet been performed on the Project.  Id. at ¶ 46.  In their opposition, Plaintiffs cite to Section 2 of the RCLA, which states that "the proceeds of the Loan

1    and any funds held in the Account shall be advanced as such times as Contractor has reached

2    stages of completed Work." Opposition at 11:16-18; SAC at Exhibit A, Doc. 36-1 at 2.

3    Therefore, Plaintiffs argue that SunTrust's actions were in contravention of Plaintiffs' rights

4    under RCLA. Opposition at 11:20-21.

5         SunTrust contends that they did not dispose of Plaintiffs' loan proceeds in derogation of

6    Plaintiffs' rights. Motion at 13:20-21. SunTrust cites to another clause in Section 2 of the

7    RCLA, which states that the "advances shall be delivered by [SunTrust] based upon progress

8    made in the Work, in such amounts and at such times as [SunTrust], in its discretion, determines

9    as being reasonable based upon inspections made from time to time by [SunTrust] or its agent."

10   SAC at Exhibit A, Doc. 36-1 at 2. SunTrust also points out that Plaintiffs expressly agreed under

11   the RCLA that each "draw request shall be deemed acceptance by [Plaintiffs] of the Work

12   completed to date, and concurrence with the amount request." Id. Thus, SunTrust argues that it

13   acted in accordance with Plaintiffs' contractual rights and responsibilities in making the advances

14   to Contractor. Reply at 13:24-14:1-2. Plaintiffs have failed to address what effect this

15   contractual language has on their conversion claim.

16        The Court agrees with SunTrust that Plaintiffs have not alleged any act of dominion

17   wrongfully exerted over Plaintiffs' property in denial of or inconsistent with Plaintiffs' rights.

18   The plain language of the RCLA states that each Draw Request was an acceptance by Plaintiffs

19   of the work completed and a concurrence with the amount requested in the Draw Requests.

20   Thus, even assuming SunTrust disbursed monies to Contractor for work that had not yet been

21   performed on the construction project, Plaintiffs accepted the work completed and concurred

22   with the amount requested in the Draw Requests. Accordingly, SunTrust's motion to dismiss

23   Plaintiffs' conversion claim is GRANTED without prejudice and with leave to amend.

24   E.   Accounting

25        SunTrust moves to dismiss Plaintiffs' claim for an accounting. SunTrust argues that an

26

27

28                                           16

accounting is not an independent cause of action, but only a type of remedy.  <u>Motion</u> at 14:5-6.

SunTrust cites to <u>Batt v. City & County of San Francisco</u>, 155 Cal. App. 4th 65, 82 (2007) for the

proposition that an accounting is not an independent cause of action.  Plaintiffs argue that their

claims have been adequately pled and therefore their request for an accounting is justified.

<u>Opposition</u> at 11:24-25.

      SunTrust is correct that <u>Batt</u> concludes that an accounting is not an independent cause of

action, but an equitable remedy.  However, at least one California Court of Appeal concludes that

an accounting is an independent cause of action.[8]  In <u>Teselle v. McLoughlin</u>, 173 Cal. App. 4th

156, 179 (2009), the court stated that a "cause of action for an accounting requires a showing that

a relationship exists between the plaintiff and defendant that requires an accounting, and that

some balance is due the plaintiff that can only be ascertained by an accounting."  "An action for

accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum

that can be made certain by calculation."  <u>Id.</u> (citation omitted).  In addition, the court stated that

"the nature of a cause of action in accounting is unique in that it is a means of discovery."  <u>Id.</u> at

180.  "Thus, the purpose of the accounting is, in part, to discover what, if any, sums are owed to

the plaintiff, and an accounting may be used as a discovery device."  <u>Id.</u>

      Plaintiffs allege that they are "entitled to compensation arising from [SunTrust's]

wrongful disbursement of monies to Contractor based upon the fraudulent Draw Requests and

Inspection Reports[.]"  SAC at ¶ 49.  Plaintiffs allege that the "amount of money due from

---

[8]     This Court has previously cited to <u>Teselle</u> for the proposition that an accounting is
a cause of action.  <u>See</u> <u>Nguyen v. Saxon Mortg. Servicing, Inc.</u>, No. 1:11–CV–00755 AWI SMS,
2011 WL 2636261, at *4 (E.D. Cal. Jul. 5, 2011).  Similarly, other federal district courts in
California have also cited to <u>Teselle</u> for the same proposition.  <u>See</u> <u>Rondberg v. McCoy</u>, No.
09–CV–1672–H (CAB), 2009 WL 5184053, at *4 (S.D. Cal. Dec. 21, 2009); <u>Serrano v. World
Sav. Bank, FSB</u>, No. 11–CV–00105–LHK, 2011 WL 1668631, at *4 (N.D. Cal. May 3, 2011).

[SunTrust] to Plaintiffs is unknown and cannot be ascertained without an accounting of, among other things, the actual work completed on the Project at the time each inspection was made by Carter and the amount of monies which should have been paid out in accordance with the work actually completed on the Project." Id. at ¶ 50.

To the extent that Plaintiffs can bring such a cause of action, Plaintiffs fail to state a claim. First, Plaintiffs have not alleged that a relationship exists between Plaintiffs and SunTrust that requires an accounting. Second, Plaintiffs have not alleged that a "balance" is due to them. See Quinteros v. Aurora Loan Servs., 740 F. Supp. 2d 1163, 1170 (E.D. Cal. 2010) (stating that an accounting "usually means the striking of a balance between debits and credits, showing a balance due, if any"). Third, Plaintiffs have not sufficiently alleged that some balance is due that can *only* be ascertained by an accounting. Plaintiffs have not alleged facts suggesting that the amount owed to them cannot be ascertained through ordinary means. Accordingly, SunTrust's motion to dismiss Plaintiffs' claim for an accounting is GRANTED without prejudice and with leave to amend.

F.     Intentional Infliction of Emotional Distress

SunTrust moves to dismiss Plaintiffs' intentional infliction of emotional distress ("IIED") claim. SunTrust argues that Plaintiffs have not alleged conduct that was extreme or outrageous. Motion at 14:22.

Under California law, the elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. KOVR-TV, Inc. v. Superior Court, 31 Cal. App. 4th 1023, 1028 (1995). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593

(1979).  Generally, conduct will be found to be actionable where the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  KOVR-TV, 31 Cal. App. 4th at 1028.

Plaintiffs' IIED claim does not specify what conduct by SunTrust is at issue.  Plaintiffs merely allege that "the conduct of SunTrust alleged herein was extreme and outrageous."  SAC at ¶ 53.  Plaintiffs clarify in their opposition that their IIED claim is based on SunTrust abusing their position of power to damage Plaintiffs' interests.  Opposition at 12:3-5 (citing to Newby v. Alto Riviera Apartments, 60 Cal. App. 3d 288, 297 (1976), overruled on other grounds by Marina Point, Ltd. v. Wolfson, 30 Cal. 3d 721, 740 n.9 (1982)).

Plaintiffs state that SunTrust used its superior bargaining position to gain power and control over Plaintiffs' interests in this matter.[9]  Opposition at 12:5-7.  Plaintiffs contend that they were forced to agree to the provision in the RCLA that states: "Each draw request shall be deemed acceptance by Borrower of the Work Completed to date, and concurrence with the amount requests."  Id. at 12:10-13 (citing to SAC at Exhibit A, Doc. 36-2 at 1).  Therefore, Plaintiffs conclude that SunTrust's "conduct in requiring Plaintiffs to acquiesce to payments not yet made for which Plaintiffs were not provided any documentation is sufficiently 'outrageous'" to support their IIED claim.  Id. at 12:14-16.

In response, SunTrust states that there are no allegations in the SAC to suggest that Plaintiffs signed the RCLA with SunTrust under duress or that the contract is otherwise unenforceable.  Reply at 11:1-3.  The Court agrees.  The SAC is devoid of any allegations that suggests SunTrust abused its position of power in negotiating the RCLA with Plaintiffs.

---

[9]     SunTrust's opposition again refers to their allegation that SunTrust "intentionally drafted their residential construction loan agreements to forgo notice to the borrowers as to the monies being disbursed yet impose a burden on the borrower to pay monies for work which borrower is unable to verify has been performed."  Opposition at 12:7-10; SAC at ¶ 33.  However, as discussed above, SunTrust's residential construction loan agreements explicitly provide for a borrower to receive the loan directly and only pay a contractor if the work is actually done, unless the borrower agrees to opt out of this arrangement.

1   Accordingly, SunTrust's motion to dismiss Plaintiffs' IIED claim is GRANTED without

2   prejudice and with leave to amend.

3   G.      Breach of Contract

4          SunTrust moves to dismiss Plaintiffs' breach of contract claim.  SunTrust argues that

5   Plaintiffs have "failed to allege that SunTrust breached any contractual duty owed to them and

6   that they were injured as a result."  Motion at 16:4-5.

7          In California, "[a] cause of action for breach of contract requires proof of the following

8   elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance;

9   (3) SunTrust's breach; and (4) damages to plaintiff as a result of the breach."  Williams v. Bank

10  of Am., No. 2:09-CV-3060-JAM-KJM, 2010 WL 3034197, at *4 (E.D. Cal. Jul. 30, 2010)

11  (quoting CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008)).

12         In the SAC, Plaintiffs allege that SunTrust breached the terms of the Residential

13  Construction Loan Allonge to Note ("Allonge").  SAC at ¶ 57-58.  Plaintiffs allege that on or

14  about October of 2009, SunTrust breached the terms of the Allonge by failing to convert the

15  construction loan to a permanent loan upon completion of the construction project.  Id. at ¶ 58.

16  Plaintiffs allege that the Allonge specifically states that the "Note, as amended, represents both a

17  construction/home improvement loan and a permanent mortgage loan."  Id.

18         Plaintiffs state in their opposition that under "the terms of the contract at issue,

19  [SunTrust] was required to convert Plaintiffs' construction loan to a permanent loan upon

20  completion of the Project."  Opposition at 13:11-13.  However, the Court agrees with SunTrust

21  that Plaintiffs "fail to identify which particular term of the alleged contract was breached by

22  SunTrust's alleged failure to convert their loan."  Reply at 11:16-17.  The SAC is unclear as to

23  what SunTrust's obligations were under the Allonge to convert Plaintiffs' construction loan to a

24  permanent loan.  The mere fact that Plaintiffs allege that the Allonge states that the Note

25  represents both a construction loan and a permanent loan does not indicate that SunTrust was

26

27

28                                                20

required to convert the construction loan to a permanent loan upon completion of the construction project.  Accordingly, SunTrust's motion to dismiss Plaintiffs' breach of contract claim is GRANTED without prejudice and with leave to amend.

### CONCLUSION

Accordingly, SunTrust's motion to dismiss is GRANTED in its entirety consistent with this order.  Any amended complaint must be filed within twenty-one (21) days of the filing of this order.

IT IS SO ORDERED.

Dated:    August 31, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE